## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **BERNARDO ACOSTA,** | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| **VS.** | § | CIVIL ACTION NO. 1:21-cv-615 |
| | § | |
| | § | |
| **WILLIAMSON COUNTY, TEXAS,** | § | |
| **AND UNKNOWN JAILERS 1 - 10** | § | |
| *Defendants.* | § | JURY DEMANDED |

### PLAINTIFF'S ORIGINAL COMPLAINT

This is a case of a tragic denial of medical and mental health care desperately needed by Bernardo Acosta, a pre-trial detainee. Jailers intentionally slammed the cell door on Mr. Acosta's hand, causing severe injury. Jailers also denied Mr. Acosta access to his PTSD medication and CPAP machine, causing endangerment to his life and mental anguish. Williamson County policies, practices, and customs resulted in Mr. Acosta not receiving required medical care. Defendants' deliberate indifference and objective unreasonableness caused Mr. Acosta to suffer unnecessary injury and mental anguish.



TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW, Plaintiff, BERNARDO ACOSTA, and files this PLAINTIFF'S ORIGINAL COMPLAINT, complaining of WILLIAMSON COUNTY, TEXAS, and UNKNOWN JAILERS 1-10 (collectively, "Defendants"), and for cause of action would respectfully show this Honorable Court the following:

## I. DISCOVERY

1.   Plaintiff intends for discovery to be conducted under the Court's scheduling order and Rules 26 to 37 and Rule 45 of the Federal Rules of Civil Procedure.  This case involves complex issues and will require extensive discovery.  Therefore, Plaintiff asks the court to order that discovery be conducted in accordance with a discovery plan tailored to the particular circumstances of this suit.

## II.     INTRODUCTORY ALLEGATIONS

### A.     PARTIES

2.   Plaintiff Bernardo Acosta ("Plaintiff" or "Mr. Acosta") is a natural person who resided in, was domiciled in, and was a citizen of Texas at all relevant times.

3.   Defendant Williamson County, Texas ("Williamson County") is a Texas County. Williamson County may be served with process pursuant to Federal Rule of Civil Procedure 4(j)(2) by serving its chief executive officer, Judge Bill Gravell, Jr., at 710 S. Main Street, Suite 101, Georgetown, Texas 78626, or wherever Honorable Judge Gravell may be found. Service on such a person is also consistent with the manner prescribed by Texas law for serving a summons or like process on a county as a Defendant, as set forth in Texas Civil Practice and Remedies Code Section 17.024(a). Williamson County acted or failed to act at all relevant times through its employees, agents, representatives, jailers,

and/or chief policymakers, all of whom acted under color of State law at all relevant times, and is liable for such actions and/or failures to act to the extent allowed by law (including but not necessarily limited to law applicable to claims pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act, and the Rehabilitation Act). Williamson County's policies, practices, and/or customs were moving forces behind constitutional violations, and resulting damages and injury, referenced and asserted in this pleading.

4.      Defendant, Individual Jailers 1 -10 ("Individual Jailers"), who may be served at their place of work, located at 306 W. 4th Street, Georgetown, Texas 78626.

## B.  JURISDICTION AND VENUE

5.      The court has original subject matter jurisdiction over this lawsuit according to 28 U.S.C. § 1331 and 1343(4), because this suit presents a federal question and seeks relief pursuant to federal statutes providing for the protection of civil rights. This suit arises under the United States Constitution (Fourteenth Amendment) and the following federal statutes: 42 U.S.C. § 1983, the Americans with Disabilities Act, and the Rehabilitation Act of 1973.

6.      Venue is proper in the Austin Division of the United States District Court for the Western District of Texas, pursuant to 28 U.S.C. § 1391(b)(2). A substantial part of the events or omissions giving rise to claims in this lawsuit occurred in Williamson County, which is in the Austin division of the United States District Court for the Western District of Texas.

## III.    FACTUAL ALLEGATIONS

### A.      INTRODUCTION

7.      Plaintiff provides in the factual allegations sections below the general substance of certain factual allegations. Plaintiff does not intend that those sections provide in detail, or necessarily in chronological order, any or all allegations. Rather, Plaintiff intends that those

sections provide Defendants with sufficient fair notice of the general nature and substance of Plaintiff's allegations, and further demonstrate that Plaintiff's claim(s) have factual plausibility. Whenever Plaintiff pleads factual allegations "upon information and belief," Plaintiff is pleading that the specified factual contentions have evidentiary support or will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

## B.     BERNARDO ACOSTA

8.     Bernardo Acosta is 41 years old. He lives with his family in Leander, Texas. Mr. Acosta has taught criminal justice at several local high school for five years. Mr. Acosta is a Veteran of the Air Force who has served the United States of America in Afghanistan and in Iraq, as a Security Forces Specialist, Air Force police. He was honorably discharged from our Nation's Armed Forces and has a high security clearance level with the federal government.

9.     Mr. Acosta was using music, specifically playing the six-string guitar, as part of his therapy to work through his Post-Traumatic Stress Disorder ("PTSD"). Mr. Acosta has played the guitar since he was a sophomore in high school. He played with his Church ministry and for charity for those in need. He has not been able to feel the guitar strings since the accident, and his therapy has begun to regress.

## C.     PLAINTIFF'S INCARCERATION IN THE WILLIAMSON COUNTY JAIL

10.     On May 27, 2021, Mr. Acosta was arrested for the offense of driving while intoxicated, absent a breathalyzer or blood alcohol test, and placed in Williamson County Jail.  No prosecution of this offense has commenced to date, and on information and belief, and the prosecutor has refused to prosecute.

11.    Mr. Acosta suffers from Post-Traumatic Stress Disorder ("PTSD") as a result of his deployments to Afghanistan and Iraq. He also suffers from sleep apnea, a serious sleep disorder in which breathing repeatedly stops and starts. This condition requires use of a breathing device known as a Continuous Positive Airway Pressure machine ("CPAP"), which forces a steady flow of oxygen into the nose and mouth while a person is sleeping. Upon being placed in his cell, Mr. Acosta notified jailers that he suffers from the psychiatric disorder and serious sleep disorder. These debilitating disabilities required not only numerous psychiatric medications but also use of a CPAP machine in order to not asphyxiate while sleeping.

12.    Mr. Acosta informed the Individual Jailer that he was a Veteran and that he needed his PTSD medications to call his wife for his needed prescriptions. The jailer refused to allow him to request his medication from his wife. Acosta pleaded with the jailer to provide this basic care and the jailer maliciously slammed Acosta's hand in the holding cell door. The Individual Jailer put her entire body weight into slamming the door on Mr. Acosta's hand. This resulted in an open fracture of the left ring finger.

13.    The Individual Jailers were not only inattentive they were intentionally denying Mr. Acosta necessary medical care, including: his prescribed medications and required breathing machine. It was not until after Mr. Acosta began suffering from a severe anxiety attack that the Individual Jailers decided to address some of his concerns.

14.    Acosta pleaded for help and received none for an extended period of time, writhing in pain from an open fracture and severe blood loss occurring he was denied medical care. He tried to get the attention of the Individual Jailers. The blood that originally splattered over another inmate.

15.  Mr. Acosta spread blood covering an entire window so they would see the injury was real, since his pleas were originally being ignored. The severe blood loss and incarceration triggered a PTSD episode in Mr. Acosta, and he suffered continued mental trauma and was still denied basic medical care. When the Individual Jailers finally opened the jail cell door to address Plaintiff's multiple concerns, they dismissed his pleas for help. After nearly half an hour in pain he was removed from the cell to the general in-processing area.

16.  Mr. Acosta was treated, if you can call it that, in a public and open space, despite the blood loss and injury to his hand. He was handed a cup of salt water and surrounded by 8 officers, he was told to soak his broken finger in the salt water and given a band aid and gauze wrapping. He was taken to a single cell and left to suffer in pain from the broken bone all night long. The bleeding and throbbing never stopped, and he bleed through the gauze wrapping very quickly. He did not receive any treatment, checkup, or pain medicine the rest of the night. His requests for the wrapping to be changed because of soaking in blood were never addressed.

 

17.    Mr. Acosta was never taken to the infirmary. It was nearly two hours between the time

Mr. Acosta was injured and when he was finally permitted to call for the PTSD

medication from the infirmary, his wife immediately brought the medication, which was

never provided to Mr. Acosta.

18.    He was then placed back in a cell, without his prescribed medication and breathing

machine. He never received his PTSD medication or his CPAP machine the entire time he

was incarcerated, despite his pleas for both, and the fact his wife had provided his PTSD

medication to Williamson County personnel.

19.    When Mr. Acosta was finally released, he went to an urgent care center regarding his

severely injured finger. His medical providers discovered that the bone in his finger was

broken, a hole had to be drilled in the nail to relieve the pressure from the blood build up,

to stop the throbbing in the finger, which continued for nearly three weeks. At this time

Mr. Acosta noticed there was no feeling in the pad where the bone was broken. Mr. Acosta

still does not have feeling in the finger.

20.    Since leaving Williamson County Jail, Mr. Acosta has suffered from continued panic

attacks, nightmares, and regression in his therapy. He may also need surgery to correct the

injuries to his finger.

### D.    *MONELL* LIABILITY OF WILLIAMSON COUNTY

21.    Plaintiff re-alleges and incorporates by reference all proceeding paragraphs.

22.    Plaintiff sets forth in this section of the pleading additional facts and allegations supporting

*Monell* liability claims against Williamson County. It is Plaintiff's intention that all facts

asserted in this pleading relating to policies, practices, and/or customs of Williamson

County support such *Monell* liability claims, and not just facts and allegations set forth in

this section. Such policies, practices, and customs alleged in this pleading were moving forces behind and proximately caused the constitutional violations and damages asserted herein.

23. Williamson County knew, when it incarcerated Plaintiff, that its personnel, policies, practices, and/or customs were such that it could not meet its constitutional obligations to provide appropriate medical treatment and/or mental health treatment to Plaintiff. Williamson County made decisions about policy and practice which it implemented through its commissioners' court, its sheriff, its jail administrator, and/or through such widespread practice and/or custom that such practice and/or custom became the policy of Williamson County as it related to its jail.

24. There were several policies, practices, and/or customs at the Williamson County jail which were moving forces behind, caused, were producing causes of, and/or proximately caused Mr. Acosta's suffering, injury, and other damages referenced in this pleading. The County made deliberate decisions, acting in a deliberately indifferent and/or objectively unreasonable manner, when implementing and/or allowing such policies, practices, and/or customs to exist. Further, when the County implemented and/or consciously allowed to exist such policies, practices, and/or customs, the County knew with certainty that the result would be serious injury and suffering.

25. The Williamson County jail policy manual indicates that the Williamson County Commissioners' Court appropriates funds for the jail, while the Williamson County Sheriff's Office provides management and personnel for medical services to inmates. Such personnel could include physicians, medical directors, psychologists, dentists, physician's assistants, registered nurses, licensed locational nurses, and medical assistants.

26.     The Williamson County Commissioners' Court, as a policymaker, and in the alternative chief policymaker, for Williamson County regarding funding for such services, upon information and belief, made the decision not to provide sufficient funding for prisoners such as Plaintiff who needed emergency mental health treatment for his PTSD or to provide trained medical personnel who would provide use of a CPAP machine. As shown elsewhere in this pleading, Plaintiff was on multiple prescription medications to treat his mental disorder. Williamson County chose, as a result of opting not to fund such needed mental health services or necessary medical devices, to allow Plaintiff and others similarly situated to suffer from severe mental health and medical crises while in its care. This policy, practice, and/or custom was a moving force behind and proximately caused, or was a producing cause of, all injuries and damages referenced in this pleading.

27.     Upon information and belief, Williamson County did not have competent, well-trained, and/or appropriately supervised personnel to deal with inmates needing medical attention and care. Upon information and belief, additional evidence will be adduced in this case to show that the medical services department was, as a whole, incompetent. That evidence will include information demonstrating a general lack of care and deliberate indifference. This policy, practice, and/or custom was a moving force behind and proximately caused, or was a producing cause of, all injuries and damages referenced in this pleading.

28.     Williamson County chose to house inmates, such as Plaintiff, in cells which were essentially metal boxes, with a single window in the cell door. This practice, together with serious psychiatric disorders, caused unnecessary additional psychiatric injury, mental anguish, and emotional distress. Thus, it increased the effects of mental illness. This policy, practice, and/or custom was a moving force behind and proximately caused, or was a

producing cause of, all injuries and damages referenced in this pleading.

## IV.    CAUSES OF ACTION AGAINST WILLIAMSON COUNTY

### A.    14TH AMENDMENT DUE PROCESS CLAIMS UNDER 42 U.S.C. § 1983: OBJECTIVE REASONABLENESS PURSUANT TO *KINGSLEY V. HENDRICKSON*

29.    Plaintiff re-alleges and incorporates by reference all proceeding paragraphs.

30.    In *Kingsley v. Hendrickson,* 135 S. Ct. 2466 (2015), a pretrial detainee sued several jailers alleging that they violated the 14th Amendment's Due Process Clause by using excessive force against him. *Id*. at 2470. The Court determined the following issue: "whether, to prove an excessive force claim, a pretrial detainee must show that the officers were *subjectively* aware that their use of force was unreasonable, or only that the officer's use of that force was *objectively* unreasonable." *Id*. (emphasis in original). The Court concluded that the objectively unreasonable standard was that to be used in excessive force cases, and that an officer's subjective awareness was irrelevant. *Id.* The Court did so, acknowledging and resolving disagreement among the Circuits. *Id.* at 2471-72.

31.    The Court flatly wrote "the defendant's state of mind is not a matter that a plaintiff is required to prove." *Id.* at 2472. Instead, "courts must use an objective standard." *Id* at 2472.

32.    "[A] pretrial detainee must show only that the force purposefully or knowingly used against him was objectively unreasonable." *Id.* at 2473. Thus, the Court required no *mens rea*, no conscious constitutional violation, and no subjective belief or understanding of offending police officers, or jailers, for an episodic claim but instead instructed all federal courts to analyze officers', or jailers', conduct on an objective reasonability standard. Since pretrial detainees' rights to receive reasonable medical and mental health care, to be protected from harm, and not to be punished at all, also arise under the 14th Amendment's Due Process Clause, there is no reason to apply a different standard when analyzing those rights.

10

33. It appears that this objective reasonableness standard is now the law of the land.   In *Alderson v. Concordia Parish Corr. Facility*, 848 F.3d 415 (5th Cir. 2017), the Fifth Circuit Court of Appeals considered appeal of a pretrial detainee case in which the pretrial detainee alleged failure-to-protect and failure to provide reasonable medical care claims pursuant to 42 U.S.C. §1983.  *Id.* at 418.  The court wrote, "Pretrial detainees are protected by the Due Process Clause of the Fourteenth Amendment." *Id.* at 419 (citation omitted). The Fifth Circuit determined, even though *Kingsley* had been decided by the United States Supreme Court, that a plaintiff in such a case still must show subjective deliberate indifference by a defendant in an episodic act or omission case.  *Id.* at 419-20.  A plaintiff must still show that actions of such an individual person acting under color of state law were "reckless."  *Id.* at 420 (citation omitted).   However, concurring Circuit Judge Graves dissented to a footnote in which the majority refused to reconsider the deliberate indifference, subjective standard, in the Fifth Circuit.  *Id.* at 420 and 424-25.[1]

---

[1] Circuit Judge Graves wrote: "I write separately because the Supreme Court's decision in Kingsley v. Hendrickson, —— U.S. ——, 135 S.Ct. 2466, 192 L.Ed.2d 416 (2015), appears to call into question this court's holding in Hare v. City of Corinth, 74 F.3d 633 (5th Cir. 1996).  In Kingsley, which was an excessive force case, the Supreme Court indeed said: "Whether that standard might suffice for liability in the case of an alleged mistreatment of a pretrial detainee need not be decided here; for the officers do not dispute that they acted purposefully or knowingly with respect to the force they used against Kingsley."  Kingsley, 135 S.Ct. at 2472.  However, that appears to be an acknowledgment that, even in such a case, there is no established subjective standard as the majority determined in Hare. Also, the analysis in Kingsley appears to support the conclusion that an objective standard would apply in a failure-to-protect case. See id. at 2472–2476.

Additionally, the Supreme Court said:

We acknowledge that our view that an objective standard is appropriate in the context of excessive force claims brought by pretrial detainees pursuant to the Fourteenth Amendment may raise questions about the use of a subjective standard in the context of excessive force claims brought by convicted prisoners.  We are not confronted with such a claim, however, so we need not address that issue today. Id. at 2476.  This indicates that there are still different standards for pretrial detainees and DOC inmates, contrary to at least some of the language in Hare, 74 F.3d at 650, and that, if the standards were to be commingled, it would be toward an objective standard as to both on at least some claims.

Further, the Ninth Circuit granted en banc rehearing in Castro v. County of Los Angeles, 833 F.3d 1060 (9th Cir. 2016), after a partially dissenting panel judge wrote separately to point out that Kingsley "calls into question our precedent on the appropriate state-of-mind inquiry in failure-to-protect claims brought by pretrial detainees." Castro

34.     Thus, an objective unreasonableness standard, with no regard for officers' or jailers' subjective belief or understanding, should apply in this case and all pretrial detainee cases arising under the Due Process Clause of the 14th Amendment. The Fifth Circuit, and the district court in this case, should reassess Fifth Circuit law in light of *Kingsley* and apply an objective unreasonableness standard to constitutional claims in this case. The court should not apply a subjective state of mind and/or deliberate indifference standard. The Supreme Court discarded the idea that a non-convicted plaintiff should have such a burden.

## B.     CAUSE OF ACTION AGAINST WILLIAMSON COUNTY UNDER 42 U.S.C. § 1983 FOR VIOLATION OF 14TH AMENDMENT DUE PROCESS RIGHTS TO REASONABLE MEDICAL AND/OR MENTAL HEALTH CARE, TO BE PROTECTED, AND NOT TO BE PUNISHED

35.     In the alternative, without waiving any of the other causes of action pled herein, without waiving any procedural, contractual, statutory, or common-law right, and incorporating all other allegations herein (including all allegations in the "Factual Allegations" section above) to the extent they are not inconsistent with the cause of action pled here, Defendant Williamson County is liable to Plaintiff pursuant to 42 U.S.C. § 1983, for violating Mr. Acosta's rights to reasonable medical care, to be protected, and not to be punished as a pretrial detainee. These rights are guaranteed by the 14th Amendment to the United States Constitution. Pre-trial detainees are entitled to a greater degree of medical care than convicted inmates, according to the Fifth Circuit Court of Appeals. Pre-trial detainees are also entitled to protection, and also not to be punished at all since they have not been

---

v. County of Los Angeles, 797 F.3d 654, 677 (9th Cir. 2015). The en banc court concluded that Kingsley applies to failure-to-protect claims and that an objective standard is appropriate. Castro, 833 F.3d at 1068–1073.

In Estate of Henson v. Wichita County, 795 F.3d 456 (5th Cir. 2014), decided just one month after Kingsley, this court did not address any application of Kingsley.  Likewise, the two subsequent cases also cited by the majority did not address or distinguish Kingsley. Hyatt v. Thomas, 843 F.3d 172 (5th Cir. 2016), and Zimmerman v. Cutler, 657 Fed.Appx. 340 (5th Cir. 2016). Because I read Kingsley as the Ninth Circuit did and would revisit the deliberate indifference standard, I write separately."

convicted of any crime resulting in their incarceration.

36.    Williamson County acted or failed to act under color of state law at all times referenced in this pleading. They wholly or substantially ignored Mr. Acosta's obvious serious medical needs, and they were deliberately indifferent to those needs. They failed to protect Plaintiff, from further injury and mental anguish, along with other actions and/or inaction described in this pleading, resulting in unconstitutional punishment of Mr. Acosta. Williamson County's agents were aware of the excessive risk to Mr. Acosta's health and safety and were aware of facts from which an inference could be drawn of serious harm, pain, and suffering.  Moreover, they in fact drew that inference. Williamson County's agents violated clearly established constitutional rights, and their conduct was objectively unreasonable in light of clearly established law at the time of the relevant incidents.

37.    The Fifth Circuit Court of Appeals has made it clear that Plaintiff need not allege the appropriate policymaker at the pleadings stage. Nevertheless, out of an abundance of caution, the sheriff of Williamson County was the relevant chief policymaker over matters at issue in this case. Moreover, in addition, and in the alternative, the jail administrator was the relevant chief policymaker over matters at issue in this case. Finally, in addition, and in the alternative, the County's commissioners' court was the relevant chief policymaker.

38.    Williamson County was deliberately indifferent regarding policies, practices, and/or customs developed and/or used with regard to Williamson County prisoners with serious medical and/or mental health issues, as evidenced by allegations set forth above. Williamson County also acted in an objectively unreasonable manner. Policies, practices, and/or customs referenced above, as well as the failure to adopt appropriate policies, were moving forces behind and caused violation of Plaintiff's rights and showed deliberate

indifference to the known or obvious consequences that constitutional violations would occur. Williamson County's relevant policies, practices, and/or customs, whether written or not, were also objectively unreasonable as applied to Plaintiff.

39.    Williamson County's denial of reasonable medical and mental health care, and other actions and/or inaction set forth in this pleading, caused, proximately caused, and/or were producing causes of Mr. Acosta's suffering and injury and other damages mentioned and/or referenced in this pleading.

40.    Therefore, Mr. Acosta suffered the following damages, for which he seeks recovery from Williamson County:

- Plaintiff's conscious physical pain, suffering, and mental anguish;

- Plaintiff's medical expenses; and

- Exemplary/punitive damages.

Exemplary/punitive damages are appropriate in this case to deter and punish clear and unabashed violation of Plaintiff's constitutional rights. Williamson County's actions and inaction showed a reckless or callous disregard of, or indifference to, Plaintiff's rights and safety. Moreover, Mr. Acosta, seeks reasonable and necessary attorneys' fees available pursuant to 42 U.S.C. §§ 1983 and 1988.

**C.    CAUSES OF ACTION AGAINST WILLIAMSON COUNTY FOR VIOLATION OF AMERICANS WITH DISABILITIES ACT AND REHABILITATION ACT OF 1973**

41.    In the alternative, without waiving any of the other causes of action pled herein, without waiving any procedural, contractual, statutory, or common-law right, and incorporating all other allegations herein (including all allegations in the "Factual Allegations" section above) to the extent they are not inconsistent with the cause of action pled here, Williamson County is liable to Plaintiff pursuant to the Americans with Disabilities Act ("ADA") and

federal Rehabilitation Act. Upon information and belief, Williamson County has been and is a recipient of federal funds. Therefore, it is covered by the mandate of the federal Rehabilitation Act. The Rehabilitation Act requires recipients of federal monies to reasonably accommodate persons with mental and physical disabilities in their facilities, program activities, and services, and also reasonably modify such facilities, services, and programs to accomplish this purpose. Further, Title II of the ADA applies to Williamson County and has the same mandate as the Rehabilitation Act. Claims under both the Rehabilitation Act and ADA are analyzed similarly.

42. The Williamson County jail is a "facility" for purposes of both the rehabilitation and ADA, and the jail's operation comprises a program and services for Rehabilitation Act and ADA purposes. Plaintiff is a qualified individual for purposes of the Rehabilitation Act and ADA, regarded as having a mental impairment and/or medical condition that substantially limits one or more of his major life activities. Plaintiff is therefore disabled.

43. The ADA prohibits discrimination by public entities. To establish such Discrimination, a plaintiff must allege: (1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability.

44. A majority of circuits have held, for purposes of Rehabilitation Act of 1973 and ADA claims, that one may prove intentional discrimination by showing that a defendant acted with deliberate indifference. The Fifth Circuit has, as yet declined to follow the majority view. Nevertheless, intent can never be shown with certainty. Direct and circumstantial evidence can be used to support an "intent" jury finding, and allegations in this pleading

show that there is more than enough of both.

45.    The Rehabilitation Act and the ADA are judged under the same legal standard.

46.    Plaintiff was discriminated against by reason of his disability. Upon information and belief, discovery in this case will show that medical officers and the Individual Jailers in the Williamson County jail neglected to treat Plaintiff's broken finger and denied him his PTSD medication and his CPAP machine, that was brought to the facility by his wife.

47.    Williamson County's failure and refusal to accommodate Plaintiff's mental and/or physical disabilities while in custody violated the Rehabilitation Act and the ADA. Williamson County, among other things referenced above, chose to house Plaintiff in essentially a metal box with a broken and lacerated finger, for lengthy periods, knowing that he was also mentally unstable and needed immediate medical treatment. Williamson County deliberately chose to deny treatment to Plaintiff. Such a failure and refusal caused, proximately caused, and was a producing cause of Plaintiff's suffering, injury, and damages.

48.    Williamson County's violations of the Rehabilitation Act and the ADA included the failure to provide services and accommodations, for Mr. Acosta's disabilities. These failures and refusals, which were intentional, proximately caused Plaintiff's damages. Because Plaintiff's injuries resulted from Williamson County's intentional discrimination against him, he is entitled to the maximum amount of compensatory damages allowed by law. Mr. Acosta seeks all such damages itemized in the prayer and or body in this pleading (including sections above giving appropriate and fair notice of Mr. Acosta's 42 U.S.C. § 1983 claims and resulting damages) to the extent allowed by the Rehabilitation Act and the ADA, and Plaintiff also seeks reasonable and necessary attorneys' fees and other remedies

afforded by those laws.

## V.  CAUSES OF ACTION AGAINST WILLIAMSON COUNTY AND INDIVIDUAL JAILERS

### A.  NEGLIGENCE

41.    Plaintiff re-alleges and incorporates by reference all proceeding paragraphs.

42.    Individual Jailers acted within the scope of their office or employment under the circumstances. All Defendants are either vicariously or individually liable to Plaintiff under the Texas Tort Claims Act.

43.    Under Texas law, a claim for negligence requires that a (1) defendant owed the plaintiff a legal duty, (2) defendant breached that duty, and (3) defendant's breach proximately caused damages to the plaintiff. *Bustamante v. Ponte*, 529 S.W.3d 447, 456 (Tex. 2017).

44.    Williamson County and the Individual Jailers owed a legal duty of care to Mr. Acosta as a pretrial detainee in their custody.

45.    Individual Jailers breached the duty they owed to Mr. Acosta when they slammed Mr. Acosta's hand in the jail cell and failed to provide him with appropriate medical care, including, but not limited to: timely treatment for his broken finger; providing him with his prescribed PTSD medication; and providing him with a CPAP machine.

46.    Individual Jailer's failure to provide Mr. Acosta with medical care in these circumstances proximately caused Mr. Acosta's injuries.

47.    Individual Jailers are not entitled to qualified immunity.[2] Their denial of reasonable

---

[2] The defense of qualified immunity is, and should be held to be, a legally impermissible defense. In the alternative, it should be held to be a legally impermissible defense except as applied to state actors protected by immunity in 1871 when 42 U.S.C. § 1983 was enacted. Congress makes laws. Courts do not. However, the qualified immunity defense was invented by judges. When judges make law, they violate the separation of powers doctrine of the United States Constitution. Plaintiff respectfully makes a good faith argument for the modification of existing law, such that the court–created doctrine of qualified immunity be abrogated or limited.

medical and mental health care, and other actions and/or inaction set forth in this pleading, actually caused, proximately caused, and/or were producing causes of Mr. Acosta's suffering, injury, and other damages mentioned and/or referenced in this pleading.

## B.  GROSS NEGLIGENCE

48.    Plaintiff re-alleges and incorporates by reference all proceeding paragraphs.

49.    The Individual Jailers acted within the scope of their office or employment under the circumstances. All Defendants are either vicariously or individually liable to Plaintiff under the Texas Tort Claims Act.

50.    Under Texas law, gross negligence involves two components: "(1) viewed objectively from the actor's standpoint, the act or omission complained of must involve an extreme degree of risk, considering the probability and the magnitude of the potential harm to others; and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others." *Lee Lewis Const., Inc. v. Harrison*, 70 S.W.3d 778, 785 (Tex. 2001).

---

The natural person Defendants cannot show that they would fall within the category of persons referenced in the second sentence of this footnote. This would be Defendants' burden, if they choose to assert the alleged defense. Qualified immunity, as applied to persons not immunized under common or statutory law in 1871, is untethered to any cognizable legal mandate and is flatly in derogation of the plain meaning and language of Section 1983. *See Ziglar v. Abassi*, 137 S. Ct. 1843, 1870-72 (2017) (Thomas, J., concurring). Qualified immunity should have never been instituted as a defense, without any statutory, constitutional, or long-held common law foundation, and it is unworkable, unreasonable, and places too high a burden on Plaintiffs who suffer violation of their constitutional rights. Joanna C. Schwartz, *The Case Against Qualified Immunity,* 93 Notre Dame L. Rev. 1797 (2018) (observing that qualified immunity has no basis in the common law, does not achieve intended policy goals, can render the Constitution "hollow," and cannot be justified as protection for governmental budgets); and William Baude, Is Qualified Immunity Unlawful?, 106 Calif. L. Rev. 45, 82 (2018) (noting that, as of the time of the article, the United States Supreme Court decided 30 qualified immunity cases since 1982 and found that defendants violated clearly established law in only 2 such cases). Justices including Justice Thomas, Justice Breyer, Justice Kennedy, and Justice Sotomayor have criticized qualified immunity. Schwartz, supra at 1798–99. See also Cole v. Carson, _ F.3d _, 2019 WL 3928715, at * 19-21, & nn. 1, 10 (5th Cir. Aug. 21, 2019) (en banc) (Willett, J., Dissenting). Additionally, qualified immunity violates the separation of powers doctrine of the Constitution. See generally Katherine Mims Crocker, Qualified Immunity and Constitutional Structure, 117 Mich. L. Rev. 1405 (2019) (available at https://repository.law.umich.edu/mlr/vol117/iss7/3). Plaintiff includes allegations in this footnote to assure that, if legally necessary, the qualified immunity abrogation or limitation issue has been preserved.

51. Defendants' actions involved an extreme degree of risk. Individual Jailers recognized the need for medical attention and care, and the mental and emotional stress their actions placed on Mr. Acosta.

52. Following Defendants' actions or lack thereof, Mr. Acosta became extremely distraught, as he was bleeding profusely from his injured finger. Defendants were objectively and subjectively aware that their actions posed an extreme risk of harm.

53. Despite knowing this, Individual Jailers continued with their decision to withhold medical treatment, prescription medications, and a CPAP machine from Mr. Acosta.

54. Mr. Acosta's suffering and injuries were caused by the grossly negligent or wrongful acts or omissions of the Individual Jailers when they failed to provide him with adequate medical treatment.

55. Through their grossly negligent actions, the Individual Jailers violated their duty to provide Mr. Acosta with medical attention and care, which resulted in Mr. Acosta's unnecessary injury to his hand and suffering from not being provided with the proper medication and treatment.

56. The gross negligence of the Williamson County and Individual Jailers caused Mr. Acosta's injuries and suffering.

57. The Defendants' actions constitute gross negligence under Texas Law.

58. Plaintiff is entitled to actual and compensatory damages.

### VI. CAUSES OF ACTION AGAINST THE INDIVIDUAL JAILERS

### A. ASSAULT AND BATTERY

59. Plaintiff re-alleges and incorporates by reference all proceeding paragraphs.

60. Under Texas law, a claim for excessive force is simply one for assault and battery. Plaintiff

alleges that the Individual Jailers committed an assault upon him when the Individual Jailers intentionally, knowingly and/or recklessly slammed the jail cell door on Mr. Acosta's hand. Said assaultive conduct of the Individual Jailers was committed intentionally, knowingly and/or recklessly, and was the proximate cause of the physical and emotional injuries, including the ongoing mental anguish suffered by Mr. Acosta. Said injuries were the direct and immediate consequence of the Individual Jailer's wrongful acts and a natural and direct result of the assault resulting in the damages described herein.

## VII. JURY DAMAND

61.    Plaintiff demands a jury trial on all issues which may be tried to a jury.

## VIII.   PRAYER

For these reasons, Plaintiff asks that Defendants be cited to appear and answer, and that Plaintiff be awarded damages within the jurisdictional limits of the Court and against all Defendants, jointly and severally, as legally available and applicable, for all damages referenced above and below in this pleading:

- Plaintiff's medical expenses;

- All damages authorized by all federal laws for the violations of same;

- exemplary/punitive damages;

- past mental anguish and emotional distress resulting from and caused by Plaintiff's injuries;

- future mental anguish and emotional distress resulting from and caused by Plaintiff's injuries;

- Plaintiff's conscious pain and suffering;

- reasonable and necessary attorneys' fees for Mr. Acosta;

- court costs and all other recoverable costs;

- prejudgment and post judgment interest at the highest allowable rates; and

- all other relief, legal and equitable, general and special, to which Plaintiff Mr. Acosta is entitled.

Respectfully submitted,

**THE EDWARDS LAW FIRM PLLC**

By:

George Edwards III
State Bar No. 24055438
Fed. Id. No. 1031248
Christine D. Herron
State Bar No. 24076435
Fed. Id. No. 3654794
1300 McGowen Street
Suite 280
Houston, Texas 77004
Phone: (832) 717-2562
Fax: (713) 583-8715
Email: george@eslawpartners.com
Email: christine@eslawpartners.com
**ATTORNEYS FOR PLAINTIFF**