# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **BERNARDO ACOSTA,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **WILLIAMSON COUNTY, TEXAS,** | § | **Case No. 1:21-cv-00615-LY** |
| **UNKNOWN JAILERS 1-10,** | § | |
| **ALYSSA HOFFMAN, JOSE** | § | |
| **GARZA, AIREL KORN, RUBEN** | § | |
| **VELA, ROBERTO RODRIGUEZ** | § | |
| **and FERNANDO MORALES,** | § | |
| *Defendants* | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

### TO: THE HONORABLE LEE YEAKEL
### UNITED STATES DISTRICT JUDGE

Before the Court are Defendant Williamson County's Partial Motion to Dismiss, filed October 11, 2021 (Dkt. 38); Defendant Roberto Rodriquez's Motion to Dismiss, filed October 25, 2021 (Dkt. 46); Defendant Alyssa Hoffman's Partial Motion to Dismiss, filed November 8, 2021 (Dkt. 50); Defendants Jose Garza, Ariel Korn, Ruben Vela and Fernando Morales' Motion to Dismiss, also filed November 8, 2021 (Dkt. 51); and the associated response and reply briefs. The District Court referred the Motions to the undersigned Magistrate Judge for Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. Dkts. 45, 64.

## I.    Background

Plaintiff Bernardo Acosta is a 41-year-old Air Force veteran who lives in Leander, Texas. Acosta alleges that he suffers from Post-Traumatic Stress Disorder ("PTSD") and sleep apnea. He

takes prescription medications for PTSD and uses a breathing device, a Continuous Positive Airway Pressure ("CPAP") machine, for his sleep apnea.

On May 27, 2021, Acosta was arrested in Williamson County, Texas (the "County") for the offense of driving while intoxicated and taken to Williamson County Jail. Acosta alleges that after he was placed in his cell, he notified County jail officers that he suffers from PTSD and sleep apnea. Acosta contends that he then asked County Jail Officer Alyssa Hoffman if he could call his wife to ask her to bring his PTSD medication and CPAP machine. Second Am. Compl. (Dkt. 34) ¶¶ 18, 93. Acosta contends that Officer Hoffman refused and "maliciously slammed Acosta's hand in the holding cell door," fracturing his left ringer. *Id.* Acosta alleges that he "pleaded for help and received none for an extended period of time, writhing in pain from an open fracture and severe blood loss." *Id.* ¶ 20. Because he was "being ignored," Acosta alleges, he "spread blood covering an entire window so they would see the injury was real." *Id.* ¶ 21. Plaintiff alleges that his "severe blood loss and incarceration triggered a PTSD episode." *Id.*

After "nearly half an hour in pain," Plaintiff alleges, he was "removed from the cell to the general in-processing area." *Id.* ¶ 22. He was handed a cup of salt water in which to soak his finger, a bandage, and gauze. Acosta contends that after he soaked his finger in the salt water, the officers placed him in a single cell, where he was "left to suffer in pain from the broken bone all night long." *Id.* ¶ 22. Acosta did not receive any further medical treatment or pain medicine that night. Acosta further alleges that "[h]e never received his PTSD medication or his CPAP machine the entire time he was incarcerated, despite his pleas for both, and the fact his wife had provided his PTSD medication to Williamson County personnel." *Id.* ¶ 24.

After he was released from jail the next morning, Acosta went to an urgent care center, where medical providers diagnosed him with a broken finger. Acosta complains that he "still does not have feeling in the finger." *Id.* ¶ 24. He further alleges that: "Since leaving Williamson County

Jail, Mr. Acosta has suffered from continued panic attacks, nightmares, and regression in his therapy," and that he "may also need surgery to correct the injuries to his finger." *Id.* ¶ 26.

On July 12, 2021, Acosta filed this civil rights suit under 42 U.S.C. § 1983, alleging constitutional violations and state law claims against the County and "Unknown Jailers 1-10." Dkt. 1 at 1. Subsequently, Acosta identified the "Jailers" as Alyssa Hoffman, Jose Garza, Ariel Korn, Ruben Vela, Roberto Rodriguez, and Fernando Morales (the "Individual Defendants"). Dkt. 34 ¶¶ 5-10. Specifically, in his Second Amended Complaint, Acosta asserts claims for excessive force under the Fourth, Eighth, and Fourteenth Amendments, as well as state law claims for negligence and gross negligence, against all Defendants; claims against Williamson County for deliberate indifference to medical care under the Due Process Clause of the Fourteenth Amendment, discrimination, and failure to accommodate under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act; and state law claims for assault and battery against the Individual Defendants. Defendants move to dismiss some or all of Acosta's claims under Federal Rule of Civil Procedure 12(b)(6).

## II.    Legal Standards

### A.  Rule 12(b)(6)

Rule 12(b)(6) allows a party to move to dismiss an action for failure to state a claim on which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted). The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Twombly*, 550 U.S. at 555 (cleaned up). In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is generally limited to the (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

## B. Section 1983

Liability under 42 U.S.C. § 1983 results when a "person" acting "under color of" state law deprives another of rights "secured by the Constitution" or federal law. Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). Thus, a plaintiff must identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Government officials "are entitled to qualified immunity under Section 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "Clearly established means that, at the time of the officer's

conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *Id.* (cleaned up). In other words, existing law must have placed the constitutionality of the officer's conduct "beyond debate." *Id.* This demanding standard protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

In *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91(1978), the Supreme Court held that municipalities may be sued under Section 1983 but cannot be held liable for acts of their employees under a theory of *respondeat superior*. "A municipality is almost never liable for an isolated unconstitutional act on the part of an employee; it is liable only for acts directly attributable to it 'through some official action or imprimatur.'" *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). To establish municipal liability under Section 1983, "a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson*, 588 F.3d at 847. These three requirements "are necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself." *Piotrowski*, 237 F.3d at 578. A plaintiff need not offer proof of her allegations at this stage, but still must plead facts plausibly supporting each element. *Iqbal*, 556 U.S. at 678.

"Official policy establishes culpability, and can arise in various forms." *Peterson*, 588 F.3d at 847. Official policy usually exists in the form of written policy statements, ordinances, or regulations, but also may arise in the form of a widespread practice "so common and well-settled as to constitute a custom that fairly represents municipal policy." *Id.* In addition, a "single decision" may constitute municipal policy in "rare circumstances" when the official or entity possessing "final policymaking authority" for an action "performs the specific act that forms the

basis of the § 1983 claim." *Webb v. Town of Saint Joseph*, 925 F.3d 209, 215 (5th Cir. 2019) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986)). A policy can be shown in "extreme factual situations" where "the authorized policymakers approve a subordinate's decision and the basis for it," thereby ratifying the subordinate's unconstitutional actions. *Peterson*, 588 F.3d at 848 (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). Finally, a municipality's decision not to train or supervise its employees about their legal duty to avoid violating citizens' rights may rise to the level of an official policy for purposes of Section 1983. *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989).

A policy or custom is official only when it results from the decision or acquiescence of the municipal officer or body with "final policymaking authority" over the subject matter of the offending policy. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989). And "a plaintiff must establish that the policy was the moving force behind the violation. In other words, a plaintiff must show direct causation." *Peterson*, 588 F.3d at 848. This means that "there must be a direct causal link" between the policy and the violation, not merely a "but for" coupling between cause and effect. *Id.*; *Fraire v. City of Arlington*, 957 F.2d 1268, 1281 (5th Cir. 1992).

"[P]retrial detainees have a constitutional right, under the Due Process Clause of the Fourteenth Amendment, not to have their serious medical needs met with deliberate indifference on the part of the confining officials." *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). A serious medical need is "one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006). Also, "a serious medical need may exist for psychological or psychiatric treatment, just as it may for physical ills." *Partridge v. Two Unknown Police Officers of the City of Houston*, 791 F.2d 1182, 1187 (5th Cir. 1986).

A government entity may incur Section 1983 liability for the "episodic acts and omissions" of its officials if the plaintiff shows that (1) the government official, acting with subjective deliberate indifference, violated the detainee's constitutional rights, and (2) the government official's acts resulted from a municipal policy or custom adopted with objective indifference to the detainee's constitutional rights. *Sanchez v. Young Cnty., Texas*, 866 F.3d 274, 280 (5th Cir. 2017).

"Deliberate indifference is an extremely high standard to meet." *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020). A prison official acts with deliberate indifference only if (1) "he knows that inmates face a substantial risk of serious bodily harm," and (2) "he disregards that risk by failing to take reasonable measures to abate it." *Gobert*, 463 F.3d at 346 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). The failure to alleviate a significant risk that the official "'should have perceived, but did not' is insufficient to show deliberate indifference." *Domino v. Texas Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Farmer*, 511 U.S. at 838). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert*, 463 F.3d at 346. A showing of deliberate indifference requires the prisoner or pretrial detainee to show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.*

### III.    County's Partial Motion to Dismiss

The County argues that Acosta's constitutional claims should be dismissed because Acosta has not plausibly alleged that a policy or custom of the County was the moving force behind the alleged constitutional violations. The County also argues that Acosta's gross negligence claim and claim for punitive damages are barred under Texas law. The County has not moved dismiss Plaintiff's ADA, Rehabilitation Act, or negligence claims.

## A. Excessive Force[1]

Acosta alleges that the County is liable for Defendant Hoffman's alleged use of excessive force in slamming his hand in the jail cell doors. As noted, for the County to be liable for an official's alleged constitutional violations, Acosta must sufficiently allege that (1) an official policy or custom of the County (2) promulgated by the County policymaker (3) was the "moving force" behind the violation of Acosta's constitutional rights. *Peterson*, 588 F.3d at 847. The parties dispute whether Acosta has alleged sufficient facts to show that the County had a policy or custom of using excessive force against pretrial detainees.

### 1. Pattern

Acosta first argues that the County has a policy or custom of using excessive force because it had a pattern "of using excessive force, such as slamming a person's hand in the jail cell door." Dkt. 44 at 6. "In order to find a municipality liable for a policy based on a pattern, that pattern 'must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees.'" *Davidson v. City of Stafford, Texas*, 848 F.3d 384, 396 (5th Cir. 2017) (quoting *Peterson*, 588 F.3d at 850). "A pattern requires similarity, specificity, and sufficiently

---

[1] In his Second Amended Complaint, Plaintiff alleges that Defendants' use of excessive force violated his Fourth, Eighth, and Fourteenth Amendment rights. The Due Process Clause of the Fourteenth Amendment, rather than the Fourth and Eighth Amendments, applies to a legally seized pretrial detainee's allegation of excessive force. *See Graham v. Connor*, 490 U.S. 386, 395 n. 10 (1989) ("[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment. After conviction, the Eighth Amendment serves as the primary source of substantive protection . . . in cases . . . where the deliberate use of force is challenged as excessive and unjustified.") (cleaned up); *Brooks v. George Cnty., Miss.*, 84 F.3d 157, 167 (5th Cir. 1996) ("The Fourth Amendment is inapplicable to a pretrial detainee who was properly arrested and is awaiting trial. That detainee has recourse to due process protections, not protection against unreasonable seizures after a lawful seizure has occurred."); *Brothers v. Klevenhagen*, 28 F.3d 452, 457 (5th Cir. 1994) ("Once an individual has been arrested and is placed into police custody, and surely after the arresting officer has transferred the individual to a jail cell, the individual becomes a pretrial detainee, protected against excessive force by the Due Process Clause."). Accordingly, the Court construes Plaintiff's excessive force under the Fourteenth Amendment.

numerous prior incidents." *Davidson*, 848 F.3d at 396. Thus, "a plaintiff must demonstrate a pattern of abuses that transcends the error made in a single case." *Peterson*, 588 F.3d at 850-51.

To show that Williamson County had a pattern of using excessive force against pretrial detainees, Acosta points to incidents concerning the following individuals:

- Javier Ambler II, who was killed by excessive use of stun guns;
- Asher Watsky, who was injured during a "no-knock" raid;
- An unidentified domestic violence victim who was slammed to the ground;
- Ramsey Michell, who was beaten unconscious during a traffic stop;
- Marquina Gilliam-Hicks, who was nearly body slammed to the ground by an officer;
- Charles Thornburg, who had his genitals mauled by a police dog;
- Jay Kreper, who was injured by restraints used in the Williamson County Jail; and
- Daniel McCoy, who was not provided medical attention in the Williamson County Jail and died from lack of medical care.

Dkt. 34 ¶ 54.

The Court finds that these eight incidents are insufficient to show a pattern of excessive force used by the County against pretrial detainees such as Acosta. "A pattern requires similarity and specificity; prior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." *Peterson*, 588 F.3d at 851. To establish a pattern through prior incidents, the plaintiff must allege incidents that are "fairly similar to what ultimately transpired." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010).

Acosta alleges that a County Jail Officer used excessive force against him when he was a pretrial detainee in the Williamson County Jail by slamming Acosta's hand in a jail cell door. Only the last two of the eight incidents on which Acosta relies involve alleged use of excessive force against a pretrial detainee. The other six incidents appear to involve alleged use of excessive force by patrol officers against suspects during police pursuits and arrests in Williamson County. These six incidents are too factually dissimilar from Acosta's allegations to permit the Court to infer a

custom of detention officers at the County Jail using excessive force against pretrial detainees. *See Hill v. Turknett*, No. 3:19-CV-2871-K, 2020 WL 3872743, at *5 (N.D. Tex. July 9, 2020) (holding that alleged use of excessive force by sheriff's deputies against free citizen in county building was too factually dissimilar from plaintiff's allegation that jail detention officers used excessive force against pretrial detainees).

A pattern also requires "sufficiently numerous prior incidents," as opposed to "isolated instances." *Id.* at 851. The Fifth Circuit maintains a high bar for finding prior incidents sufficiently numerous to constitute a pattern. *See Davidson*, 848 F.3d at 397 (three reports of a violation of a policy in three-and-a-half years insufficient to establish a pattern); *Carnaby v. City of Houston*, 636 F.3d 183, 189-90 (5th Cir. 2011) (two reports of violations of a policy in four years insufficient); *Peterson*, 588 F.3d at 851 & n.4 (twenty-seven complaints of excessive force over four years insufficient); *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002) (eleven incidents of warrantless searches insufficient). Acosta relies on just two factually similar incidents. This is insufficient to constitute a pattern under Fifth Circuit precedent. *See Hamilton v. Turner*, No. 3:13-CV-240, 2014 WL 1513355, at *6 (S.D. Tex. Apr. 16, 2014) ("A dearth of prior, similar incidents almost invariably results in dismissal in the Fifth Circuit.").

## 2. Ratification

In addition to asserting a pattern of excessive force, Acosta argues that the County had a policy of excessive force because the County ratified the alleged use of excessive force against Acosta by failing to reprimand the officers involved. Dkt. 44 at 7. The Fifth Circuit Court of Appeals "has limited the theory of ratification to 'extreme factual situations.'" *Peterson*, 588 F.3d at 848; *see also Davidson*, 848 F.3d at 395 (same); *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009) (same).

In *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985), the Fifth Circuit imposed liability

on a city for a policy of "prevalent recklessness" when a group of police officers killed a man they

mistook for a fugitive. 767 F.2d at 171. In *Coon v. Ledbetter*, 780 F.2d 1158 (5th Cir. 1986) the

Fifth Circuit explained that *Grandstaff*

> does *not* stand for the broad proposition that if a policymaker
> defends his subordinates and if those subordinates are later found to
> have broken the law, then the illegal behavior can be assumed to
> have resulted from an official policy. Rather, *Grandstaff* affirmed a
> judgment against a Texas city on a highly peculiar set of facts: in
> response to a minor traffic violation, three patrol cars engaged in a
> high speed chase during which they fired wildly at the suspected
> misdemeanant; the object of this chase took refuge on an innocent
> person's ranch, where the entire night shift of the city police force
> converged and proceeded to direct hails of gunfire at anything that
> moved; although nobody except the police was ever shown to have
> fired a shot, the innocent rancher was killed when the police shot
> him in the back as he was emerging from his own vehicle; after this
> "incompetent and catastrophic performance," which involved a
> whole series of abusive acts, the officers' supervisors "denied their
> failures and concerned themselves only with unworthy, if not
> despicable, means to avoid legal liability." The *Grandstaff* panel
> emphasized the extraordinary facts of the case, and its analysis can
> be applied only to equally extreme factual situations.

*Id.* at 1161 (citations omitted).

Subsequently, the Fifth Circuit has acknowledged that "ratification is 'seldom, if ever, found

by this court.'" *Peterson*, 588 F.3d at 848 n.2; *see also, e.g.*, *Davidson*, 848 F.3d at 396 (holding

that city was not be liable under ratification theory where police chief found no constitutional

violation in plaintiff's arrest, which violated plaintiff's First Amendment rights, because

underlying conduct by officers "was not sufficiently extreme to qualify for a finding of

ratification"); *Peterson*, 588 F.3d at 848 (rejecting ratification theory where police chief later

condoned officer's use of excessive force in striking plaintiff with his knee during arrest because

case did not present "an extreme factual situation"); *Snyder v. Trepagnier*, 142 F.3d 791, 797-98

(5th Cir. 1998) (rejecting ratification theory where plaintiff was shot in the back while fleeing from

police on foot, finding that case "hardly rises to the level of the 'extraordinary factual circumstances' presented in *Grandstaff*—particularly given the absence of evidence suggesting a culture of recklessness" in police department).

Since *Grandstaff*, the Fifth Circuit has stated repeatedly "that a policymaker who defends conduct that is later shown to be unlawful does not necessarily incur liability on behalf of the municipality." *Peterson*, 588 F.3d at 848; *see also Davidson*, 848 F.3d at 395; *Coon*, 780 F.2d at 1161. Moreover, "good faith statements made while defending complaints of constitutional violations by municipal employees do not demonstrate ratification." *Davidson*, 848 F.3d at 395. Policymakers who "simply go along with" a subordinate's decision do not thereby vest final policymaking authority in the subordinate; nor does a "mere failure to investigate the basis of a subordinate's discretionary decisions" amount to such a delegation. *Milam v. City of San Antonio*, 113 F. App'x 622, 627 (5th Cir. 2004). "Such limitations on municipal liability are necessary to prevent the ratification theory from becoming a theory of *respondeat superior*, which theory *Monell* does not countenance. Policymakers alone can create municipal liability, and so any violation must be causally traceable to them, not just to their subordinates." *Id.* (citations omitted).

Based on this precedent, Acosta's allegations do not rise to the level of the "extreme factual situation" presented in *Grandstaff* to impose ratification liability on the County.

### 3.  Single Incident Exception

Acosta also relies on the single incident exception to establish a policy of excessive force against pretrial detainees. He alleges that the County is liable for the officers' conduct because "a single decision may create municipal liability *if* that decision was made by a final policymaker responsible for that activity such as by the current Sheriff." Dkt. 44 at 4.

Acosta is correct that in "rare circumstances," a single unconstitutional action may be sufficient to impose municipal liability "if undertaken by the municipal official or entity possessing final

policymaking authority for the action in question." *Davidson*, 848 F.3d at 395. An unconstitutional policy may be found only "when a policymaker performs the specific act that forms the basis of the § 1983 claim." *Id.*

Acosta alleges neither that the officers were policymakers nor that the County Sheriff was involved in the incident giving rise to this lawsuit. Accordingly, this case does not present the "rare circumstances" under which the single incident exception applies.

Acosta has not alleged sufficient facts to show that the County had a policy or custom of using excessive force against pretrial detainees. Thus, he has failed to meet the first factor under *Monell*. Even if Acosta had alleged sufficient facts to show that the County had a policy or custom of excessive force, he has not shown a "direct causal link" between the policy and the constitutional violation. *Peterson*, 588 F.3d at 848. Therefore, Acosta has failed to allege a viable excessive force claim against the County.

### B. Due Process

Acosta alleges that the County violated his Fourteenth Amendment right to medical care by failing to treat his broken finger and provide his prescribed PTSD medication and CPAP machine.

#### 1. Broken Finger

Acosta alleges that after Defendant Hoffman slammed his hand in the holding cell door, he was "writhing in pain" and "pleaded for help and received none for an extended period of time." Dkt. 34 ¶ 20. Thirty minutes later, Acosta alleges, the Individual Defendants removed him from the jail cell and gave him a cup of salt water, a bandage, and gauze for his bleeding finger. Acosta argues that because he was not sent to the infirmary and did not receive "antibiotics, x-rays, and splints with clean gauze" for his broken finger, "he was treated with wanton and deliberate disregard, which establishes *Monell* liability against Defendant." Dkt. 44 at 10.

"A prison official's knowledge of a substantial risk of harm may be inferred if the risk was obvious." *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006). The Court finds that Acosta's broken finger was not "obvious." *See Zimmerman v. Cutler*, 657 F. App'x 340, 348 (5th Cir. 2016) (finding that the fracture in detainee's arm "was not obvious" and noting that his "only obvious injuries were the scratches on his arm, for which he received prompt medical attention"). According to his allegations, Acosta's only obvious physical injury was his cut and bleeding finger, for which he received medical attention. *See* Dkt. 34 at 8 (photograph of Acosta's finger). The fact that the Individual Defendants did not property diagnose his fractured finger does not mean that they were deliberately indifferent. *See Domino*, 239 F.3d at 756 ("It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference.").

Acosta alleges that he did not receive the treatment he should have. "[M]ere disagreement with one's medical treatment is insufficient to show deliberate indifference, as are claims based on unsuccessful medical treatment, negligence, or medical malpractice." *Delaughter v. Woodall*, 909 F.3d 130, 136 (5th Cir. 2018). While Plaintiff's medical care may not have been "the best that money could buy," the Individual Defendants did take steps to treat his cut finger. *Cadena v. El Paso Cnty.*, 946 F.3d 717, 729 (5th Cir. 2020). Moreover, the Fifth Circuit has long held that "the decision whether to provide additional treatment 'is a classic example of a matter for medical judgment,' which fails to give rise to a deliberate-indifference claim." *Dyer*, 964 F.3d at 381 (quoting *Gobert*, 463 F.3d at 346). In addition, a delay in medical treatment is not actionable unless the defendants were deliberately indifferent to a serious medical need and their indifference resulted in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

Acosta's allegations regarding the treatment of his finger "amount to no more than assertions of negligence, malpractice, and failure to provide additional treatment," which are insufficient to

show deliberate indifference. *Jackson v. Fernauld*, 104 F. App'x 443 (5th Cir. 2004) (holding that inmate's allegations that prison officials failed to "treat his broken thumb properly and promptly" were insufficient to show deliberate indifference); *see also Scott v. Rapides Par. Det. Ctr. II & III*, No. 1:11CV2137, 2012 WL 6814012, at *2 (W.D. La. Oct. 17, 2012) (holding that plaintiff's complaints about treatment of cut finger did not amount to deliberate indifference where he was provided bandages), *R. & R. adopted*, 2013 WL 103519 (W.D. La. Jan. 8, 2013).

### 2.  Medication and CPAP Machine

Acosta also alleges that the County was deliberately indifferent to his medical needs by failing to provide him his PTSD medication and CPAP machine. The County contends this claim should be dismissed because Acosta does not allege "any physical injury related to the County's supposed medical treatment failures," and "psychological or emotional damage not connected to a physical injury is insufficient to allege a claim against the County under Section 1983." Dkt. 38 at 14.

Under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(e), a plaintiff may not recover for emotional or mental damages without a showing of a specific physical injury.[2] But Plaintiff does not allege such a claim; rather, Acosta alleges that the Individual Defendants were deliberately indifferent to his medical needs by failing to provide him with his PTSD medication and CPAP machine. A failure to provide a pretrial detainee with medication for psychological distress can constitute deliberate indifference, and there is no requirement for a connected physical injury. *See Est. of Bonilla ex rel. Bonilla v. Orange Cnty., Tex.*, 982 F.3d 298, 307 (5th Cir. 2020) (holding that if detainee "had exhibited signs of serious physical or psychological distress while

---

[2] *See* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury."); *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001) ("[U]under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e), [plaintiff] may not recover for emotional or mental damages without a showing of a specific physical injury.").

detained, the staff's failure to address those needs by providing her with necessary medication may have violated her established right to medical care").

In addition, in *Thomas v. Mills*, 614 F. App'x 777, 778 (5th Cir. 2015), a pretrial detainee who suffered from sleep apnea alleged a plausible claim of deliberate indifference against county defendants where the county jail officials denied his repeated requests for a replacement mask for his CPAP machine. *See also Brenckle v. MacFay*, No. CV 17-13500, 2018 WL 9453549, at *2 (E.D. La. Nov. 2, 2018) (holding that plaintiff alleged a plausible deliberate indifference claim against prison official who denied plaintiff's requests for a CPAP machine), *R. & R. adopted*, 2019 WL 4038737 (E.D. La. Aug. 27, 2019). Accordingly, the County's lack of physical injury argument is misplaced as to Acosta's deliberate indifference claim.

### 3.  No Policy or Custom

Acosta's deliberate indifference claim fails nonetheless because he has not sufficiently alleged that the Individual Defendants' alleged deliberate indifference "resulted from a municipal policy or custom adopted with objective indifference to the detainee's constitutional rights." *Sanchez*, 866 F.3d at 280. Acosta argues that the County had a custom of failing to train its jail officers "on the care required for a person who suffers from PTSD." Dkt. 44 at 12. In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of Section 1983. *Connick*, 563 U.S. at 61. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.*

To plead a claim for failure to train, a plaintiff must plead facts plausibly demonstrating that (1) the municipality's training procedures were inadequate, (2) the municipality was deliberately indifferent in adopting its training policy, and (3) the inadequate training policy directly caused the violations in question. *Anokwuru v. City of Houston*, 990 F.3d 956, 966 (5th Cir. 2021). Acosta

fails to meet the second factor. Acosta may show that the County was deliberately indifferent in adopting its training policy by alleging that the County had "[n]otice of a pattern of similar violations, which were fairly similar to what ultimately transpired." *Id.* Acosta does not allege that the County had a pattern of failing to provide medication or CPAP machines to its pretrial detainees; instead, he cites only his own incident as proof of a policy of deliberate indifference. "But plausibly to plead a practice 'so persistent and widespread as to practically have the force of law,' a plaintiff must do more than describe the incident that gave rise to his injury." *Pena v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (quoting *Connick*, 563 U.S. at 61).

In certain limited cases, a plaintiff may establish deliberate indifference through a "single incident." *Anokwuru*, 990 F.3d at 966. The single-incident exception is "reserved for those egregious cases in which the state actor was provided no training whatsoever." *Id.* Acosta's allegations do not satisfy this narrow exception.

Because Acosta identifies only the facts in this case, he has failed to establish a pattern of conduct to show deliberate indifference. *See Anokwuru*, 990 F.3d at 966 (finding that plaintiff failed to allege a pattern of failure to train where he pointed "only to his own incident as proof of a policy of deliberate indifference"); *Pena*, 879 F.3d at 622 (finding that plaintiff failed to state a policy of failure to train where "the only 'specific fact' in the complaint is the single incident in which [plaintiff] was involved"); *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984) ("Isolated violations are not the persistent, often repeated, constant violations that constitute custom and policy.").

### 4.   Conclusion as to Due Process Claims

In sum, Acosta fails to allege a plausible claim that the County was deliberately indifferent to the need for proper training. His independent failure to train and supervise claim against the County fails for the same reasons.

### C. Gross Negligence and Punitive Damages

Acosta also asserts a state law gross negligence claim against the County, alleging that the Individual Defendants' denial of medical care caused his suffering and injuries. Acosta contends that the County is vicariously liable to him under the Texas Tort Claims Act (the "TTCA"). *Id.* ¶ 82. The County argues that Acosta's gross negligence claim is barred under the TTCA.

The TTCA protects Texas and its municipalities from liability for the intentional torts of state employees. TEX. CIV. PRAC. & REM. CODE ANN. § 101.057 (West 1985); *Bustos v. Martini Club Inc.*, 599 F.3d 458, 467-68 (5th Cir. 2010). The TTCA waives governmental immunity in a limited number of circumstances, one of which is "personal injury and death so caused by a condition or use of tangible personal or real property." *Univ. of Tex. Med. Branch at Galveston v. York*, 871 S.W.2d 175, 177 (Tex. 1994) (quoting TEX. CIV. PRAC. & REM. CODE ANN. § 101.021 (West 1985)). The party suing a governmental unit bears the burden of pleading facts that affirmatively demonstrate jurisdiction by alleging a valid waiver of immunity. *Dall. Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003).

Acosta alleges that Section 101.021(2) applies because he was injured by the County's property when Defendant Hoffman intentionally slammed his hand in the jail cell door. Dkt. 44 at 14. Section 101.021, however, "does not waive immunity for claims arising out of intentional torts." *Aguirre v. City of San Antonio*, 995 F.3d 395, 422 (5th Cir. 2021) (quoting *City of Watauga v. Gordon*, 434 S.W.3d 586, 594 (Tex. 2014)). As the Texas Supreme Court has stated, "intentional conduct, no matter how it is pled, falls under the TTCA's sovereign immunity waiver exception." *Tex. Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 580 (Tex. 2001)). "Texas courts have repeatedly rejected the argument that intentional conduct by police that also forms the basis of excessive force claims . . . can give rise to cognizable claims under the TCCA." *Aguirre*, 995 F.3d at 422 (citing *City of Garland v. Rivera*, 146 S.W.3d 334, 338 (Tex. App. 2004); *City of Laredo v. Nuno*,

94 S.W.3d 786, 789 (Tex. App. 2002)); *see also Goodman v. Harris Cnty.,* 571 F.3d 388, 394 (5th Cir. 2009) (explaining that the TTCA excludes "allegations against a governmental unit arising out of the same conduct that formed the basis of the intentional tort claims against its employee").

Acosta alleges no distinct facts aside from those that formed the basis of the excessive force claim. Because his negligence claim relies on the same conduct as the excessive force allegations, it falls outside the TTCA's "limited waiver of sovereign immunity." *Goodman*, 571 F.3d at 394; *see also Saenz v. City of El Paso*, 637 F. App'x 828, 831 (5th Cir. 2016) (affirming dismissal of plaintiff's negligence claim that relied on same conduct as excessive force allegations).

Acosta's gross negligence claim based on denial of his PTSD medication and CPAP machine also does not fall within Section 101.021(2) because there was no use of County property. Moreover, Acosta seeks to hold the County liable for denial of his medication based on a failure to train theory. The TTCA is "not the appropriate vehicle for claims of negligent failure to train or supervise." *Goodman*, 571 F.3d at 394. Such claims are not within the purview of the TTCA because "a plaintiff must allege an injury resulting from the condition or use of tangible personal or real property," and "information is not tangible personal property, since it is an abstract concept that lacks corporeal, physical, or palpable qualities." *Id.* (quoting *Petta*, 44 S.W.3d at 580). Accordingly, Acosta's claim based on the denial of medication and CPAP machine fails to state a TTCA claim. Because Acosta has not stated a claim for gross negligence against the County, his related claim for punitive damages also fails.

## IV.    Individual Defendants' Motions to Dismiss

Against the Individual Defendants, Acosta asserts an excessive force claim under Section 1983 and state law claims of negligence, gross negligence, and assault and battery.

**A.  Excessive Force**

A government official is entitled to qualified immunity under Section 1983 unless (1) the official violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time. *Wesby*, 138 S. Ct. at 589. Pretrial detainees have a constitutional right under the Fourteen Amendment's Due Process Clause to be free from the use of excessive force. *Kingsley v. Hendrickson*, 576 U.S. 389, 402 (2015). To state a claim of excessive force, a pretrial detainee must allege that the defendant: (1) had a "purposeful, a knowing, or possibly a reckless state of mind"; and (2) "that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 396-97.

In his Second Amended Complaint, Acosta makes the following allegations as to his excessive force claim against the Individual Defendants:

> . . . the jailer maliciously slammed Acosta's hand in the holding cell door. The Individual Jailer put her entire body weight into slamming the door on Mr. Acosta's hand. This resulted in an open fracture of the left ring finger.
>
> ***
>
> As a result, Defendant Alyssa Hoffman's use of force against Mr. Acosta by using her entire body weight in slamming the door on his hand was clearly excessive to the need, objectively unreasonable in light of clearly established law, and directly caused Mr. Acosta's serious injuries. Defendant's actions therefore violated Mr. Acosta's Fourth Amendment right to be free from excessive force/unreasonable seizure.

Dkt. 34 ¶¶ 18, 93.

To be liable under Section 1983, an officer "must have been personally involved in the alleged constitutional deprivation or have engaged in wrongful conduct that is causally connected to the constitutional violation." *Turner v. Lieutenant Driver*, 848 F.3d 678, 695-96 (5th Cir. 2017); *see also Watson v. Interstate Fire & Cas. Co.*, 611 F.2d 120, 123 (5th Cir. 1980) (stating that "vicarious

liability cannot be the basis for recovery" under Section 1983: "Liability may be found only if there is personal involvement of the officer being sued."). Acosta's excessive force claims against Defendants Rodriguez, Garza, Korn, Vela, and Morales fail as a matter of law because he pleads no allegations in his Second Amended Complaint that they were personally involved or causally connected in the alleged slamming of Acosta's hand in the jail door. *See Turner*, 848 F.3d at 696 (holding that plaintiff failed to allege police officer violated Fourth Amendment rights where he did not allege officer had any personal involvement in arrest).

## B.  Assault and Battery

Acosta also asserts state law claims of assault and battery against the Individual Defendants, alleging that they "intentionally, knowingly and/or recklessly slammed the jail cell door on Mr. Acosta's hand." Dkt. 34 ¶ 96. Defendants Rodriguez, Garza, Korn, Vela, and Morales argue that these claims should be dismissed on the same basis as his excessive force claim: Acosta has not alleged that they were personally involved in slamming the jail cell door on Plaintiff's hand.

Texas courts have long recognized private causes of action for both assault and battery. "An assault occurs when a person is in apprehension of imminent bodily contact, whereas a battery is committed when an individual actually sustains a harmful or offensive contact to his or her person." *City of Watauga*, 434 S.W.3d at 589. The Texas Penal Code combines common-law concepts of assault and battery under its definition of "assault." Tex. Penal Code Ann. § 22.01(a) (West 2021). An individual commits assault if he: "(1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse; (2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or (3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative." *Id.* Thus, as for a claim of excessive force, the elements of assault and battery under Texas law require that that a defendant

21

is personally involved in the underlying action. *See Howard v. City of Houston, Texas*, No. CV H-21-1179, 2022 WL 479940, at *11 (S.D. Tex. Feb. 16, 2022) (stating that elements of assault and battery "require the plaintiff to allege that the defendant was present at the time of the incident").

Acosta has not alleged that Defendants Rodriguez, Garza, Korn, Vela, and Morales were personally involved in slamming the jail cell door on Acosta's hand. Accordingly, his assault and battery claims against these defendants should be dismissed.

## C. Negligence and Gross Negligence

Finally, Acosta brings claims of negligence and gross negligence against the Individual Defendants pursuant to the TTCA. The TTCA does not include individuals under its definition of a governmental unit. *Goodman*, 571 F.3d at 394. Thus, "[i]Individuals may not be sued under the TTCA as the act 'does not govern suits brought directly against an employee of the State.'" *Id.* (quoting *Huntsberry v. Lynaugh*, 807 S.W.2d 16, 17 (Tex. App.—Tyler 1991, no writ)). Accordingly, Acosta's negligence and gross negligence claims under the TTCA against all of the Individual Defendants should be dismissed. *See Goodman*, 571 F.3d at 394; *Sinegal v. City of El Paso*, 414 F. Supp. 3d 995, 1010-11 (W.D. Tex. 2019).

## V.   Leave to Amend

Acosta seeks leave to file a third amended complaint if the Court finds any of his claims deficient. Defendants oppose leave to amend, contending that Acosta has had multiple opportunities to plead his case, and any amendment would be futile.

Under Federal Rule of Civil Procedure 15(a)(2), courts "should freely give leave when justice so requires." Courts properly exercise their discretion to deny leave to amend "for a substantial reason, such as undue delay, repeated failures to cure deficiencies, undue prejudice, or futility." *Stevens v. St. Tammany Par. Gov't*, 17 F.4th 563, 575 (5th Cir. 2021). Absent such factors, leave to amend should be "freely given." *Id.* It is not an abuse of discretion to deny leave to amend where

the plaintiff "had the opportunity to cure and failed" or "did not exercise diligence," including attempting to raise facts which were "available previous to the district court's opinion." An amendment is considered futile if it would not state a claim on which relief could be granted. *Legate v. Livingston*, 822 F.3d 207, 211 (5th Cir. 2016).

The Court finds that Acosta "had the opportunity to cure and failed." *Stevens*, 17 F.4th at 575. Defendants filed two previous motions to dismiss, and Acosta has been permitted to amend his complaint twice. At a certain point, a plaintiff has pled his "best case." *See Baldwin v. Sullivan*, No. 1:18-CV-36-RP, 2018 WL 5020028, at *7 (W.D. Tex. Oct. 15, 2018) (stating that plaintiff pleaded best case after she was "apprised of the insufficiency" of her complaint). Amendment at this stage of the case would cause undue delay, and Acosta has presented no facts or legal arguments showing an amendment would not be futile. *Million v. Cos-Mar Co.*, No. 21-30250, 2022 WL 317662, at *4 (5th Cir. Feb. 2, 2022) (affirming district court's decision denying amendment). For these reasons, the undersigned Magistrate Judge recommends that Acosta's request for leave to amend his Second Amended Complaint should be denied.

## VI.    Summary

Based on the foregoing, Plaintiff's excessive force, deliberate indifference, failure to train and supervise, gross negligence, and punitive damages claims against the County should be dismissed. Plaintiff's excessive force claims and assault and battery claims against Individual Defendants Rodriguez, Garza, Korn, Vela, and Morales also should be dismissed. Finally, Plaintiff's negligence and gross negligence claims against all the Individual Defendants should be dismissed.

## VII.   Recommendation

The undersigned Magistrate Judge **RECOMMENDS** that the District Court:

(1) **GRANT** Defendant Williamson County's Partial Motion to Dismiss (Dkt. 38); Defendant Roberto Rodriquez's Motion to Dismiss (Dkt. 46); Defendant Alyssa Hoffman's Partial Motion to Dismiss (Dkt. 50); and Defendants Jose Garza, Ariel Korn, Ruben Vela and Fernando Morales' Motion to Dismiss (Dkt. 51);

(2) **DISMISS** Plaintiff's excessive force, deliberate indifference, failure to train and supervise, gross negligence, and punitive damages claims against the County; excessive force claims and assault and battery claims against Individual Defendants Roberto Rodriguez, Jose Garza, Ariel Korn, Ruben Vela, and Fernando Morales; and negligence and gross negligence claims against all the Individual Defendants;

(3) **DISMISS** Defendants Roberto Rodriguez, Jose Garza, Ariel Korn, Ruben Vela, and Fernando Morales from this lawsuit; and

(4) **DENY** Plaintiff leave to file a third amended complaint.

If the District Court adopts this Report and Recommendation, Plaintiff's ADA, Rehabilitation Act, and negligence claims against Williamson County, and his claims of excessive force and assault and battery claims against Defendant Hoffman, will remain pending.

**IT IS FURTHER ORDERED** that this case be **REMOVED** from the Magistrate Court's docket and **RETURNED** to the docket of the Honorable Lee Yeakel.

## VIII.   Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to

proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on March 11, 2022.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE